Everett vs. Everett.

*February 23 — March 18, 1884.*

VACATING JUDGMENT OF DIVORCE. *(1) Fraud going to jurisdiction. (2) Subsequent marriage of plaintiff; laches of defendant.*

1. Upon a motion to set aside a judgment of divorce it appeared that the plaintiff had commenced two prior suits for the same cause, and after the appearance of the defendant had failed to prosecute them; that the affidavit for the publication of the summons falsely and fraudulently stated that the plaintiff did not know

and could not ascertain the residence or post office address of the defendant; that the summons was published in a German newspaper not likely to give notice to the defendant, and that, in fact, she had no knowledge of the action until long after the judgment was rendered. *Held,* that the fraud in obtaining the order for publication went to the jurisdiction of the court, and that the judgment was properly vacated.

2. Within a year after the entry of such judgment the plaintiff married again. The defendant first learned of the judgment about two years after its entry but did not move to set it aside until about eighteen months later. It appeared that she had no property and could not raise money to proceed until some months after learning of the judgment. *Held,* that neither the marriage of the plaintiff nor the delay of the defendant should prevent the vacating of the judgment.

APPEAL from the County Court of *Fond du Lac* County.

This action was for a divorce on the ground of the adultery of the wife, and was commenced by the husband in August, 1879. The summons was published in the Nord-westlicher Courier, a German newspaper in the city of Fond du Lac. The defendant failed to answer the complaint, and, after the usual reference and report, judgment of divorce was rendered, dated February 2, 1880.

In September, 1883, the defendant appeared and moved, on affidavits, to set aside the order for publication and the judgment, for the reason that the affidavit on which such order was obtained was false as the plaintiff well knew both the residence and post office address of the defendant when he made the same, and for the reason that the summons was not served on the defendant. Affidavits in opposition to the motion were filed, and, after a hearing, the court on September 28, 1883, ordered that the judgment be vacated and set aside. From that order the plaintiff appealed. Other facts are stated in the opinion.

*Henry J. Gerpheide,* attorney, and *G. Stevens,* of counsel, for the appellant, contended, *inter alia,* that the court had no power to set aside the judgment after the term at which it

was granted. The defendant was guilty of laches and the motion should have been denied on that ground. *Singer v. Singer,* 41 Barb., 139; *Corwithe v. Griffing,* 21 id., 9; *Macomber v. Peck,* 39 Iowa, 351.

For the respondent there was a brief by *Winsor & Veeder,* and oral argument by *Mr. Veeder.* They argued, among other things, that it is never too late to raise the question of jurisdiction and fraud upon the court. *Johnson v. Coleman,* 23 Wis., 452; *Crouch v. Crouch,* 30 id., 667. See, also, *Weatherbee v. Weatherbee,* 20 Wis., 499; *Pollard v. Wegener,* 13 id., 569; *Carr v. Comm. Bank,* 16 id., 50; 30 Ill., 109–116; 39 Iowa, 351–355.

COLE, C. J. Doubtless the county court set aside the judgment of divorce for the reason that it had been obtained by fraud and imposition, so as to bring the case within the decisions in *Johnson v. Coleman,* 23 Wis., 452, and *Crouch v. Crouch,* 30 Wis., 667. It seems to us that conclusion is absolutely irresistible from the facts appearing before the court which could not well be denied. The plaintiff stated in the affidavit made August 11, 1879, to procure an order of publication, that after diligent effort he was unable to ascertain either the post office address or residence of the defendant, so as to make service of the summons upon her. It appears that in June, 1878, he had commenced an action for a divorce in the circuit court of Juneau county, for substantially the same causes as are stated in the complaint in this action. In that case the summons and complaint were served upon the defendant at Randolph, Cattaraugus county, New York. The defendant appeared by Winsor & Veeder, attorneys of Mauston, Wis., filed an answer, and testimony was taken in the cause. The plaintiff states that this action was discontinued February 10, 1879, though that fact is not very satisfactorily established. But be the fact as it may, on the 11th of February, 1879, he commenced a second action for divorce

in the circuit court for Kenosha county. An order of publication was procured in that suit, founded on the affidavit of his attorney that, after due diligence, the post office address of the defendant could not be ascertained. When the defendant's attorneys accidently learned of the pendency of that suit, they entered her appearance and filed an answer. There is no positive statement to the effect that that suit has ever been discontinued. The plaintiff states that he does not know whether an answer was ever served by the defendant in the Kenosha county case. A little effort on his part would have enabled him to have found out how the fact was, and whether the suit had been discontinued. Besides, the plaintiff knew that the defendant's attorneys at Mauston would probably give him any information as to the residence of the defendant, if he was really ignorant of where she lived. But we are constrained to believe that he knew well enough where the defendant lived, but was determined to obtain a divorce, if possible, without her knowledge or the knowledge of her attorneys. So he commenced this suit in the county court of Fond du Lac county, procured an order of publication, which was founded upon his affidavit before referred to. The order directed the summons to be published in a German newspaper. It is difficult to believe that the publication in such a paper would most likely give notice to the defendant, and is additional proof that the plaintiff was not proceeding in good faith. From this circumstance, and other facts in the case, we are entirely satisfied that the plaintiff's statement that he did not know either the residence or post office address of the defendant was untrue, and that he made it with the fraudulent intent of deceiving the county judge, and preventing actual notice of this suit reaching the defendant or her attorneys. If this were not so, why did not the plaintiff go to trial on the merits in one of the cases which he had already commenced, in which an issue had been formed. His conduct shows he was not act-

ing in good faith, but was endeavoring to obtain a divorce through fraud, both upon the court and the defendant.

Such a judgment should not be permitted to stand unless the defendant was guilty of laches in not earlier moving to set it aside. She states in her affidavit that she did not "have any knowledge or information that this action had been commenced, until about the month of March, 1882." This was more than two years after the divorce was granted. The defendant moved to set aside the judgment at the September term, 1883. It appears the plaintiff married again in November, 1880. The reason which the defendant gives for not moving more promptly is that she had no property and no means with which to employ counsel, except such as she earns in doing house-work, and that it was some months after she learned of the judgment before she could raise money with which to proceed. Now, if it appeared that the plaintiff had changed his *status*, or civil and social condition, after the defendant had knowledge of the divorce and a sufficient opportunity to move in the matter, there would be much force in the objection that she had been guilty of unreasonable delay in seeking redress. But as the case stands, the objection of delay is not entitled to very great weight.

The counsel for the plaintiff referred us to cases which hold that where a judgment of divorce has been acquiesced in for several years by both parties, and one of the parties has married again, the court will not disturb the decree in order to gratify mere personal feeling or for the purpose of giving alimony, even though collusion and fraud in procuring it are alleged. *Nichols v. Nichols*, 25 N. J. Eq., 60; *Singer v. Singer*, 41 Barb., 139. But in those cases the court had acquired jurisdiction of the parties by service of process or by appearance, therefore it might well be said that the acquiescence of the parties in the judgment until an innocent person had become involved by marriage, afforded a valid reason for not opening the judgment. But those cases, it is

manifest, stand upon an entirely different ground from the one at bar, where the judgment was obtained by fraud without the knowledge of the accused party.   In this case the interests and well-being of society, as well as the cause of justice, require that the fraud and imposition should not be successful.   It is of the highest importance that it should be distinctly understood that the use of such means to procure a divorce will meet with no favor from the courts of this state whenever the fraud can be clearly shown.   It may be true that the affirmance of the order of the county court will involve an innocent third party in distress and disgrace, and destroy rights acquired in reliance upon a judgment, but these consequences are unavoidable.   It is sad, but so it is, that oftentimes in life an innocent party becomes involved in the consequences of a wicked or unlawful act and suffers distress and disgrace which all would desire should rest upon the head of the wrong-doer alone.   But this is according to the constitution of things in this world, and there is no help for it.

In this case we shall not go into any general discussion of the conflicting statements in the affidavits which were used on the motion.   We rest our decision mainly upon the matters to which we have alluded,— the commencement of the two prior suits on substantially the same grounds as this; that the defendant had appeared and answered in those suits; that the plaintiff could have had a trial in either if he were proceeding in good faith; that the defendant had attorneys who represented her, and of whom the plaintiff might have obtained any information as to her residence and post office address; and the fraud in procuring the order of publication.   This was a matter which affected the jurisdiction of the court over the defendant.   For jurisdiction by publication is statutory, and it was untrue that the plaintiff was unable with due diligence to ascertain either the defendant's residence or post office address, so as to make

the service prescribed in such a case. These facts clearly show to our minds that the plaintiff committed a fraud and imposition both upon the court and defendant in obtaining the divorce.

A motion was made on behalf of the defendant for suit money. It does not appear that the plaintiff has much means aside from what he earns by his labor. We therefore have concluded to allow the defendant $25 as suit money, which is probably all the plaintiff is able to pay. The plaintiff must pay all the taxable costs of the clerk of this court, and the necessary disbursements for printing the briefs on the part of the defendant.

*By the Court.*— The order of the county court is affirmed.