[Civil No. 2753.   Filed February 25, 1929.]

[274 Pac. 772.]

EARL E. GORDON, Appellant, v. MAUDE LEE MUDD GORDON, by THOMAS DERRY, Her Guardian ad Litem, Appellee.

See Marriage, 38 **C. J.,** sec. 119, p. 1347, n. 12, sec. 122, p. 1350, n. 51.

Mr. W. L. Barnum, Kathryn Van Leuven and Mr. B. B. Blakeney, for Appellant.

Messrs. Swenson & Swenson and Mr. Vern E. Thompson, for Appellee.

McALISTER, J.—This is an appeal from an order denying the motion of Earl E. Gordon that the judgment annulling the marriage between himself and Maude Lee Gordon be vacated and set aside.

It appears from the record that on February 11, 1926, Maude Lee Gordon filed in the superior court of Pinal county, this state, a complaint praying for the annulment of the marriage between herself and Earl E. Gordon and to secure service of publication that she made and filed an affidavit stating that Earl E. Gordon was not a resident of Arizona and that his residence was unknown to her. The summons was published in the "Florence Blade Tribune," a weekly newspaper, the default of the defendant entered April 20th, 1926, and the marriage annulled on May 5th thereafter, the grounds of the decree being those alleged in the complaint. These, in substance, were that the marriage was only a pretended one, that the plaintiff was induced to consent to it through duress, and that it has never in fact been consummated by the parties.

For the purpose of pleading duress and a pretended marriage only the complaint alleges that plaintiff was born in November, 1908; that a few years prior to the marriage she inherited a valuable estate and that persons who were strangers to her obtained guardianship of her property and custody of her person, though later, in accordance with her desire,

she became the ward of her mother; that during the time she was living with her mother she received constant threats from her former custodian that such custodian, her husband and others officially behind her were going to spirit plaintiff away to a place where her whereabouts would be unknown, and, being in constant fear that this threat would be carried out and that bodily harm to her would result, she fled from Oklahoma to Kansas and later to Nebraska; that defendant knew that plaintiff lived in such constant fear and, although unacquainted with her, sought her stepfather and connived with him to the end that he (defendant) would enter into a pretended marriage with her, and plaintiff fearing that she was about to be spirited away from the custody of her parents by persons whom she felt were more interested in her estate than in herself agreed to such an arrangement although she had never seen nor heard of defendant prior to the date on which the pretended ceremony was to be performed; that defendant knew such consent as plaintiff gave to the pretended marriage was given solely out of fear for her own safety and without regard to any feelings of love and affection for him, since he was at the time a man nearly thirty years of age; that if she had been given free volition, she would never have consented to said marriage.

Desiring to have the decree set aside and the right to answer given him the defendant on May 2d, 1927, pursuant to paragraph 592, Revised Statutes of 1913, Civil Code, which permits the granting of a new trial within one year after the rendition of judgment when service has been by publication and the defendant has not appeared, filed in the superior court of Pinal county a complaint stating that he and plaintiff were married on June 8, 1925; that at the time her complaint was filed and decree of divorce granted she

was a citizen of Oklahoma under guardianship in the county of Delaware, that state, and not a resident or citizen of the state of Arizona and had not been such resident for a period of one year prior to the filing of her complaint; that during all this time defendant was a citizen of Oklahoma, residing at Miami; and that this fact was known to Maude Lee Gordon when she filed her complaint and the decree herein was entered. It is alleged further that defendant had no notice of the commencement of the action or the granting of the decree until about twenty days prior to the filing of his complaint seeking a new trial though during all the time the matter was pending in court plaintiff knew that defendant was in Miami, Oklahoma, and that mail addressed to him there would reach him. It is averred also that after the marriage and acting upon the advice of the federal agents who had charge of and were interested in plaintiff defendant took her to California, and that without cause she disappeared from there on August 5th, 1925; that immediately thereafter defendant took every action possible to learn her whereabouts and finally enlisted the aid of the Department of Justice at Washington, D. C., but that she has been by designing persons concealed and kept from defendant, her grandparents and other relatives for the purpose of illegally acquiring her estate.

Attached to this complaint as an exhibit is the affidavit of defendant, Earl E. Gordon, in which the foregoing facts are stated more in detail, along with others not appearing therein. It appears therefrom that he and plaintiff, Maude Lee Mudd, an Indian girl, who had a few years prior thereto inherited a valuable estate and was then just under seventeen years of age, both of Miami, Oklahoma, were married at Council Bluffs, Iowa, on June 8th, 1925, and that her mother accompanied them on the trip and was

present at the marriage; that upon returning from Council Bluffs the plaintiff was taken from him to Vinita, Oklahoma, where her guardian lives and that while there she signed an affidavit prepared by her guardian stating that she was fully and completely satisfied with her marriage and happy in her relations with her husband and desired to continue to live and abide with him as his wife; that such affidavit was attached as an exhibit to the affidavit of defendant.

The complaint of the defendant was drawn upon the assumption that a decree of divorce had been granted, for it deals entirely with events occurring after marriage, and the same is true of the amended complaint filed October 4th, 1927. Certain portions of this pleading were stricken on motion of the plaintiff, and on February first thereafter the defendant filed a second amended complaint in which for the first time he shaped his pleading upon the theory that an annulment of the marriage rather than a divorce had been decreed. A number of motions to strike parts of this second amended complaint were granted and this was followed by an order sustaining a special and a general demurrer to its unstricken portions. Thereupon the motion to vacate the judgment of annulment was denied and the proceedings instituted for that purpose dismissed, and it is from this order that the appeal is taken.

Only two errors are assigned, the first being the refusal to vacate the judgment annulling the marriage upon the ground that the court was without jurisdiction to hear the matter, and the second, the orders sustaining the motions to strike parts of the second amended complaint and those sustaining demurrers to the remaining portions of the same pleading. That the court was without jurisdiction is urged upon several grounds, but in our view it is necessary to dis-

cuss only the one that it had no jurisdiction of the person of appellee; that is, for the purpose of changing her married status. It appears from the application, it is claimed, that she was not at the time of the filing of her complaint for annulment nor at any time thereafter an actual, *bona fide* resident of this state. The complaint does not allege that she had been an actual, *bona fide* resident of Arizona for one year and of Pinal county for six months preceding the filing of the suit but merely that she had her domicile in Pinal county at that time, and that she was on June 8th, 1925, in Council Bluffs, Iowa, in form married to defendant, but in her testimony at the annulment hearing in May, 1926, she made the matter of her residence here definite when she stated, "We have made this place our home since the first of the year," which means that she had been a resident of Arizona only five or six weeks when she filed her complaint. Such being true, the court's jurisdiction to entertain the suit depends upon the answer to the inquiry, Do the residence requirements of paragraph 3860, Revised Statutes of 1913, Civil Code, apply to a proceeding seeking the annulment of a marriage upon grounds existing prior to the consummation of the contract the same as they do to one asking the dissolution of a valid marriage because of occurrences subsequent thereto? This paragraph reads:

"No suit for divorce from the bonds of matrimony shall be maintained in any court unless the plaintiff shall, at the time of filing his or her complaint, have been an actual *bona fide* resident of the state for one year and shall have resided in the county where the suit is filed six months next preceding the filing of the suit."

Appellee contends that this paragraph refers to divorce actions only, as distinguished from those commonly spoken of as annulment proceedings, and

that the venue of the latter is governed by the first of the eighteen exceptions to the general rule that every person shall be sued in the county in which he resides, namely, "where the defendant or all of several defendants reside out of the state, or their residence is unknown, the suit may be brought in the county in which the plaintiff resides." Paragraph 394, subd. 1, Rev. Stats. 1913, Civ. Code. If this be correct, residence in Pinal county is all that is required, the length of it being entirely immaterial, and in the absence of statutory provisions pointing to the contrary the general rule is in line with this view. *Montague* v. *Montague*, 25 S. D. 471, Ann. Cas. 1912C 591, 30 L. R. A. (N. S.) 745, 127 N. W. 630; *Millar* v. *Millar*, 175 Cal. 797, Ann. Cas. 1918E 184, L. R. A. 1918B 416, 167 Pac. 394; 9 R. C. L. 405. But where it appears that the legislature intended to classify the two actions as of the same character, the rule seems to be that the word "divorce" includes both actions. And, due to the fact that chapter 4, title 32, Revised Statutes of 1913, entitled "Absolute Divorce," contains the only reference in the statutes to annulment proceedings and that the first paragraph thereof, 3858, conferring upon superior courts the power to hear and determine such actions, and the second, 3859, enumerating the grounds upon which divorces *a vinculo matrimonii* may be granted, are followed by 3860 containing the residence requirements for persons seeking a dissolution of the marriage relation, we are of the view that the term "divorce" in this paragraph refers to all actions of this character, whether it be one under 3858 for an annulment upon some ground existing prior to the marriage, or whether it be one under 3859 for a dissolution because of some event occurring subsequent thereto. A voidable marriage, no more than a valid one, can be terminated except by a decree of a court of competent

jurisdiction, and a judicial declaration of nullity is frequently called a "divorce." "It is properly so," according to Bishop on Marriage, Divorce and Separation, vol. 2, p. 214, "where the marriage it declares void was only voidable. For example, it is common and correct in law language to speak of impotence as cause for divorce," and it is very clear from the facts alleged in this case that the marriage between plaintiff and defendant, if not valid, is at least voidable only; it is not void until a court having jurisdiction so pronounces it. This author at page 320 of the same volume says further:

"786. *'Divorce Suit'—Nullity.*—A suit to declare a marriage null is held to be within the term 'divorce suit,' in a statute of the sort we are considering."

At page 329 of the same volume appear these words:

"808. *'Divorce.'*—A statute creating a jurisdiction for 'divorce' carries with it suits for nullity."

And at page 325 is found this:

"794. *Elsewhere and Here.*—A nullity suit being mainly of the same nature, and often and by some commonly called by the same name, as the ordinary suit for divorce, the course of these volumes is, with few exceptions, to treat of it in the chapters allotted to the divorce suit in general—pointing out any dissimilarities at the proper places."

In *Wilson* v. *Wilson*, 95 Minn. 464, 104 N. W. 300, the plaintiff who had resided in the state of Minnesota for only thirty-five days brought an action to annul her marriage to defendant upon the ground of the fraudulent concealment from her of the fact that he had been inflicted with insanity, and the court, in holding that she could not maintain the action because the term "divorce" as used in the section requiring one year's residence in the state before such an action

could be brought applied also to annulment proceedings, used the following language:

"Section 4792, Gen. St. 1894, provides that no divorce shall be granted unless the complainant has resided in this state one year immediately preceding the time of exhibiting the complaint, etc. *Thelen* v. *Thelen,* 75 Minn. 433, 78 N. W. 108. Appellant submits that this section has no application to actions brought to annul void or voidable marriages under the provisions of sections 4785–4789, but has application only to actions brought for divorce upon grounds which occur subsequent to the marriage, assuming the marriage to be valid. We are not impressed with this suggestion, and our view is that the term 'divorce,' in section 4792, was used advisedly, having reference to the entire subject of procedure by action to secure annulment of the marriage. Reference to the origin of the statute throws light on the subject. Chapter 62 of the General Statutes bears the general heading, 'Divorce,' and had its origin in chapter 66 of the Statutes of 1851, and, as originally enacted, contained the same general provisions as now exist under the general head 'Divorce.' It is not reasonable to suppose that the Legislature intended to make any distinction when at a later period what is now section 4792 was added."

In *Eliot* v. *Eliot,* 77 Wis. 634, 10 L. R. A. 568, 46 N. W. 806, the plaintiff, in seeking an annulment of his marriage upon the ground of his incapacity to consent, being under age, alleged that the parties had been residents of the state for one year immediately preceding the commencement of the suit, and in sustaining an order overruling the demurrer to the complaint upon the ground that the court had no jurisdiction of the plaintiff because it did not appear from the complaint that he was a resident of the state when the action was commenced the court used this language:

"The averment therein is that the parties have been residents of this State for 'one year immediately pre-

ceding the commencement of this action.' We do not perceive how this can be true and the plaintiff. have been a non-resident of the State when the action was commenced. . . . Moreover, the provision of the Statute on this subject (R. S. Sec. 2359), so far as applicable here, is that 'no divorce shall be granted unless the plaintiff shall have resided in this State one year immediately preceding the time of the commencement of this action, unless,' etc. *Undoubtedly this Statute is applicable to this action.*" (Italics ours.)

Since the plaintiff had not been an actual *bona fide* resident of the state for one year when she filed her complaint, the court was without jurisdiction to hear the case and should have dismissed it when this fact became known.

The order appealed from is reversed and the case remanded with directions to vacate the judgment annulling the marriage and to dismiss plaintiff's complaint.

LOCKWOOD, C. J., and ROSS, J., concur.