[Civil No. 2753. Filed June 11, 1929.]

[278 Pac. 375.]

EARL E. GORDON, Appellant, v. MAUDE LEE MUDD GORDON, by THOMAS DERRY, Her Guardian ad Litem, Appellee.

See Divorce, 19 C. J., sec. 14, p. 19, n. 52.
Judgments, 34 C. J., sec. 496, p. 278, n. 89.
Limitation of Actions, 37 C. J., sec. 510, p. 1073, n. 22.
Marriage, 38 C. J., sec. 122, p. 1350, n. 51; sec. 139, p. 1360, n. 83.

For former opinion, see *ante,* p. 101, 274 Pac. 772.

Mr. W. L. Barnum, Kathryn Van Leuven and Mr. B. B. Blakeney, for Appellant.

Messrs. Swenson & Swenson and Mr. Vern E. Thompson, for Appellee.

McALISTER, J.—This case is before us on appellee's motion for a rehearing. A decree annulling the marriage entered into by Maude Lee Mudd Gordon and Earl Gordon on June 8th, 1925, at Council Bluffs, Iowa, was obtained by the former in the superior court of Pinal county, this state, on May 5th, 1926, and within a year thereafter, to wit, on May 2d, 1927, the latter filed in that court his complaint praying that this decree be vacated and set aside and that he be permitted to answer and defend the action. The trial court denied this relief and dismissed his complaint, and in reversing this order we held that because the record discloses that the plaintiff had resided in Arizona less than one year when she filed her complaint for annulment, the superior court was without jurisdiction to hear the case and should have dismissed it, the view of the court being that the residence requirement of one year in the state and six months in the county is just as applicable to a suit to annul a voidable marriage as it is to a proceeding to dissolve a valid one. See *ante,* p. 101, 274 Pac. 772. In the opinion this language was used:

"Due to the fact that chapter 4, title 32, Revised Statutes 1913, entitled 'Absolute Divorce,' contains the only reference in the statutes to annulment proceedings and that the first paragraph thereof, 3858, conferring upon superior courts the power to hear and determine such actions, and the second, 3859, enumerating the grounds upon which divorces *a vinculo matrimonii* may be granted, are followed by 3860 containing the residence requirements for persons seeking a dissolution of the marriage rela-

tion, we are of the view that the term 'divorce' in this paragraph refers to all actions of this character, whether it be one under 3858 for an annulment upon some ground existing prior to the marriage, or whether it be one under 3859 for a dissolution because of some event occurring subsequent thereto.''

Appellee contends that this holding is erroneous, and urges upon us with much force the contention that there is in chapter 4 no provision indicating that it was the intention of the legislature to include in the word ''divorce,'' as used in paragraph 3860, a proceeding to annul a marriage upon grounds existing prior thereto. The mere fact that paragraph 3858, which confers upon the superior courts the power to decree marriages null and void, appears in the chapter entitled ''Absolute Divorce,'' does not, it is argued, have this effect, because the purpose and the result of the two proceedings—annulment and divorce—are different, and upon a further consideration of the proposition we are satisfied that this position is correct. Our principal reason for so concluding is that it is the policy of the state, an unnamed but interested party in every divorce suit, that the marriage relation, the foundation of society and of civilization itself, be maintained, and the provision that a plaintiff must reside a year in the state and six months in the county, before he is permitted to file a suit for divorce, was made a part of the statute because in the mind of the legislature such a requirement would have a tendency to lessen the number of separations and at the same time render it possible to procure them without undue restriction in those instances in which real reasons therefor exist. This policy rests upon the theory that only those who may lawfully marry should or will do so, and naturally has no application to those cases in which the parties, or one of them, enters into this relation in violation of the plain language of the statute which says either that they shall not marry or that their

marriage shall be null and void if they do. It being true that the best interests of the state demand that marriage ties lawfully formed be maintained so far as possible, and that those entered into under such circumstances that the law declares them null and void should not, the reason for the residence requirement in divorce suits is not present in annulment actions. If, for instance, members of two races between whom the law prohibits intermarriage, or those within the prohibited degrees of consanguinity, or those not legally separated from a living spouse, or those not possessing the age the statute prescribes, disregard the statute and enter into the marriage relation notwithstanding, there is no reason why this status should be maintained until the party desiring it annulled shall have lived a year in the state and six months in the county, or any portion of it. The relation cannot legally exist in the first three instances, and if it be considered best for those interested and the public, whether absolutely necessary under the law or not, that a decree of court nullifying it be entered, such action should be taken at the earliest moment possible, and while in the fourth it is perhaps voidable and therefore valid for all purposes until nullified by a court of competent jurisdiction, the practical situation as well as public policy suggests that if it is to be nullified at all it should be done immediately also, and this of course could not be accomplished in cases in which the complaining party does not have the residence required of those seeking to dissolve a marriage the validity of which is unquestioned unless he is relieved of the necessity of gaining it.

We hold, therefore, that one seeking an annulment of a marriage upon some ground existing prior to entering that status is not required to comply with the residence provisions of paragraph 3860, but is governed by the first of the eighteen exceptions to the

general rule relating to venue that "no person shall be sued out of the county in which he resides," which provides that where the defendant resides out of the state or his residence is unknown suit may be brought in the county in which plaintiff resides. Paragraph 394, Rev. Stats. 1913. Such is the construction placed by the Supreme Court of Texas on a statutory provision of that state practically the same in meaning as paragraph 3860, *supra, Schneider* v. *Rabb,* 100 Tex. 211, 97 S. W. 463, and we think it correct.

This view necessitates a re-examination of the record, but we will restate the facts appearing in the original opinion only in part, and add those not yet given which a proper understanding of the assignments discussed require.

The annulment was sought and decreed upon the ground that the marriage was entered into through duress, and therefore was not real but pretended only. The defendant had one year in which to apply for a new trial, the decree having been rendered on process by publication, and on May 2d, 1927, just three days before the expiration of this period, he filed a complaint asking that the decree be set aside and the right to answer given him, and to this attached as an exhibit his affidavit stating more in detail the facts upon which he relied for this relief. First and second amended complaints were filed, and the plaintiff moved to strike certain portions of both, demurred to the latter specially and generally, and followed with a general denial. Some of the motions were granted and the demurrers were sustained, whereupon the application to set aside the decree of annulment and grant a new trial was denied and the proceeding instituted for this purpose dismissed.

In appealing from this order the defendant, appellant here, assigns two errors: The first, the refusal to vacate the judgment annulling the marriage because the court was without jurisdiction to hear the

matter, and, the second, the orders sustaining the motions to strike and the demurrers. The two principal grounds urged in support of the assignment that the court was without jurisdiction are: First, that the plaintiff, appellee here, was not at the time of filing her complaint for annulment, or at any time thereafter, an actual *bona fide* resident of the state of Arizona; and, second, that she intentionally deceived the court and induced it to take jurisdiction of the case by stating in her affidavit for service of summons by publication that she did not know the residence of appellant, when in fact she did know that he was a resident of Miami, Oklahoma, and that a notice sent to him at that place would have been received by him in due course of the mail. Inasmuch as residence so frequently turns upon the question of intention, we will not consider the first ground, but will examine the record with a view to ascertaining whether it sufficiently discloses knowledge on the part of appellee of the residence of appellant at the time of filing her complaint.

In the second amended complaint upon which the matter was heard appellant alleges that at all times mentioned in the pleadings in the case he was a resident of Miami, state of Oklahoma, and that appellee knew this and that mail addressed to him there would be received by him when she filed her complaint, made the affidavit for service of summons by publication, and in fact when every action had in the case was taken, but notwithstanding this he had no knowledge whatever of the filing of her complaint until about twenty days prior to the date on which he filed his petition asking that the decree of annulment be set aside.

It is alleged further that soon after the marriage of appellee and appellant the former fraudulently and unlawfully entered into a conspiracy with one Vic Wilson, Joe Wilson and others unknown to appellant

to procure an annulment of their marriage without the knowledge of appellant, and that pursuant to and in furtherance of this conspiracy they did the following things: Vic Wilson and his wife persuaded appellee to leave appellant during his absence from the hotel where she and he were staying in Riverside, California, and return to Oklahoma, where she with the aid of Vic and Joe Wilson kept herself in hiding, during all of which time appellant was searching for her; they traveled over various sections of the United States outside of Oklahoma for the sole purpose of finding a town or county seat so obscure that the whereabouts and identity of appellee and her co-conspirators or the pendency of the contemplated action for annulment might not become known by appellant before a decree upon a pretended constructive service could be fraudulently obtained and finally determined upon and located temporarily at Florence, Pinal county, Arizona, for the sole purpose of carrying out this unlawful design; within a few weeks thereafter she filed her complaint in the superior court of that county, and upon the direction and advice of her co-conspirators made at the time an affidavit for the purpose of obtaining service of summons therein by publication in which she stated that the residence of appellant was unknown to her, a statement that was false and untrue and known by her and her co-conspirators to be so when made.

It appears further that on May 5th, 1926, thereafter, they brought the action to trial knowing at the time that appellant had no knowledge of the commencement of it, and to sustain the allegations of her complaint that appellee testified in part as follows: That she was taken to Coffeyville, Kansas, for fear of being kidnaped, when in truth and in fact she was taken there by her co-conspirators, Vic Wilson, his wife, and Joe Wilson and others for the purpose of secreting her from her husband, to the end that she

might obtain an annulment of the marriage of herself and appellant without his knowledge; that she did not know that the address and residence of appellant was Miami, Oklahoma, when she did in fact know such to be his residence; that she left him at Riverside, California, because the situation became intolerable to her, when the fact was that she did so in furtherance of the fraudulent conspiracy to obtain clandestinely an annulment of their marriage in order that Joe Wilson might marry her.

It is also alleged that she and her co-conspirators kept her whereabouts concealed from appellant for a period of practically one year from the date of the decree of annulment in order that the time might expire in which he could file a motion under paragraph 592, Civil Code of 1913, to have the judgment set aside.

The affidavit of appellant attached to his original complaint as an exhibit was by special reference in his second amended complaint made a part thereof and an answer to appellee's petition for annulment with the request that it be considered a part of this second amended complaint was attached thereto.

The foregoing allegations, which for the purposes of this case must be taken as true since appellant's second amended complaint was disposed of on motions to strike and demurrers, justify no other conclusion than that appellee and her co-conspirators knew appellant's residence to be in Miami, Oklahoma, when she stated in her affidavit for service of summons by publication that his residence was unknown to her, and it is also just as clear that this fact, together with the others set out in the same pleading, could have had but one purpose, and that was the one claimed for them therein, namely, to obtain service of summons by publication in order that a decree of annulment might be procured without appellant's having actual knowledge of the pendency of the action

and an opportunity to appear and defend. Such an affidavit, when made under the circumstances and for the purpose described, constitutes a fraud upon the court and the defendant, and under the overwhelming weight of authority renders invalid a decree based thereon. This rule is well stated in the early case of *Crouch* v. *Crouch*, 30 Wis. 667, in the following language:

"But the order and judgment are void for another reason. It is a verity in this case that when the plaintiff made the affidavit upon which the order of publication was granted, she knew the residence or stopping place of the defendant. She also knew where he was, when she testified before the referee. Yet she studiously concealed these facts from the commissioner and the court, for the evident purpose of obtaining a judgment of divorce without the knowledge of the defendant. . . . This was a gross and inexcusable fraud upon the court and the defendant, and vitiates the whole of the proceedings. For this reason alone the order of publication and all subsequent proceedings, including the judgment, should have been set aside."

From numerous authorities to the same effect the following are cited: *Corney* v. *Corney*, 79 Ark. 289, 116 Am. St. Rep. 80, 95 S. W. 135; *Doughty* v. *Doughty*, 27 N. J. Eq. 315; *Bell* v. *Bell*, 97 Kan. 616, 156 Pac. 778; *Leathers* v. *Stewart*, 108 Me. 96, Ann. Cas. 1913B 366, 79 Atl. 16; *Metzler* v. *Metzler*, 132 Wis. 601, 113 N. W. 49; *Elmgren* v. *Elmgren*, 25 R. I. 177, 55 Atl. 322; *Dyott* v. *Henderson*, 85 N. J. Eq. 338, 97 Atl. 35; *Dorrance* v. *Dorrance*, 242 Mo. 625, 148 S. W. 94; *Shrader* v. *Shrader*, 36 Fla. 502, 18 South. 672; *Carley* v. *Carley*, 7 Gray (Mass.) 545; *Pringle* v. *Pringle*, 55 Wash. 93, 104 Pac. 135; annotation to *Graham* v. *Graham*, L. R. A. 1917B 447; Freeman on Judgments, 4th ed., par. 489.

Appellee contends, however, that even though this be true there was no error in declining to grant a

new trial because appellant did not show that he had a meritorious defense, and the court could not grant such relief unless it was made to appear that the judgment would not be the same on a rehearing; that is, it should not do a useless thing. Such, of course, is the general rule, and, as pointed out by appellee, language to this effect was used by this court in disposing of an appeal in a case in which a decree of divorce had been granted upon constructive service and a new trial under paragraph 592 asked and ordered by the trial court. *Lockwood* v. *Lockwood*, 19 Ariz. 215, 168 Pac. 501. However, no question arose there as to the sufficiency of the service, though it was only constructive. The defendant was merely exercising her statutory right to apply for a new trial within one year from the date of the decree, and it is apparent that unless she could have shown a meritorious defense the court would not have set the decree aside; there being no suggestion of fraud or of a departure even from statutory procedure in its procurement, and therefore no question as to the jurisdiction of the person of the defendant. But when, as here, the right to serve the summons constructively is based upon the affidavit of the plaintiff that the residence of the defendant was unknown to her, when this statement was knowingly untrue and made for the specific purpose of preventing the defendant from appearing and making a defense, there was in fact no service at all and the court should so treat it. It would seem to be plain that the service of process by publication based upon such an affidavit could be of no more effect, for instance, than service by an officer who makes return that he has personally served a defendant when he has not in fact done so. In neither instance would there be any actual service. That the statute relating to service by publication has been complied with would avail nothing, in view of

the fact that the condition giving a plaintiff the right to invoke it did not exist.

"Should it be made to appear," said the court in *Adams* v. *Adams,* 51 N. H. 388, 12 Am. Rep. 134, "that the libellant, knowing where the libellee resided, fraudulently caused the notice to be published in a paper not likely to be seen by her or her friends with the purpose of preventing the notice reaching her, and that the artifice was successful, the court ought not to hesitate to treat it as no notice at all, and no real compliance with the requisitions of the statute. The order of notice may have been complied with, but if fraudulently procured, with the very purpose of avoiding the giving of actual notice, it ought to be regarded as what it really is, no notice at all."

The only effect such service can have is to confer a jurisdiction that is merely apparent or colorable, not actual or real. That this is true is clear because the court is necessarily without knowledge of a defect in service that is regular on its face and can take cognizance of it only after it is disclosed by proof of extrinsic facts *dehors* the record. But when proof of this kind is made, and the defect is shown to be one invalidating the service, every act theretofore or thereafter performed based upon it is void and without effect and should be set aside at the request of the party affected by it. In *Dyott* v. *Henderson, supra,* the New Jersey Court of Chancery, upon the complaint of the wife seeking to set aside a decree of divorce obtained by the husband, held even after his death that his affidavit made to procure service of process by publication and stating that his wife's residence could not be ascertained was intentionally falsified for the purpose of concealing from her the pendency of the suit for divorce and for this reason constituted a fraud upon the court which invalidated the decree. In *Spinney* v. *Spinney,* 87 Me. 484, 32 Atl. 1019, a case in which the plaintiff had procured service by publication upon her affidavit falsely stat-

ing that she had made due diligence to ascertain the residence of her husband but had been unable to do so, and did not know where it was, the court used the following language:

"It is the opinion of the court that the service of the libel was illegal and insufficient to confer upon the court jurisdiction; that the apparent jurisdiction was colorable only, and not real; and that it is the duty of the justice of the superior court, by whom the divorce was granted, to annul it." *Leathers* v. *Stewart, supra; Pringle* v. *Pringle, supra; Crouch* v. *Crouch, supra; Johnson* v. *Coleman,* 23 Wis. 452, 99 Am. Dec. 193; *Everett* v. *Everett,* 60 Wis. 200, 18 N. W. 637; *Metzler* v. *Metzler, supra.*

It being true therefore, that the court had no jurisdiction of the person of appellant under the great weight of authority, no affidavit of merits was required to set aside the judgment, or do what is practically the same thing, grant a new trial under paragraph 592. *Bennett* v. *Supreme Tent of Knights of Maccabees of the World,* 40 Wash. 431, 2 L. R. A. (N. S.) 389, 82 Pac. 744; *Corney* v. *Corney, supra;* 34 C. J. 333, and note 62; 15 Ency. Pl. & Pr. 278.

Appellee contends, however, that even though the court was without jurisdiction of the person of appellant, the latter waived this and submitted himself to its jurisdiction for all purposes when he filed his complaint setting up nonjurisdictional facts and attempting to attack the original action on its merits and caused summons to issue therein. The purpose of appellant in filing his complaint was to have the decree of annulment set aside and vacated and an opportunity given him to appear and defend, or, to use the language of paragraph 592 under which he proceeded, a new trial granted him, and it is clear that such action did bring him within the jurisdiction of the court for all proceedings that might be had in the case and constituted a general appearance.

Whether it was general or special, however, was immaterial, because his action in calling attention to appellee's misconduct did not affect in the least the court's duty to set aside the service and vacate the judgment on account of the fraud perpetrated by appellee in attempting to obtain service of process. *Metzler* v. *Metzler, supra.*

"But," to quote the language used by the Supreme Court of Washington in *Woodham* v. *Anderson,* 32 Wash. 500, 73 Pac. 536, in disposing of a similar contention: "What had theretofore been done was done without jurisdiction. The judgment previously entered was void. Their general appearance at that time did not validate the void judgment, but simply brought them into court, without the necessity of new process, to be dealt with thereafter as the law of the case required."

One sentence from *Bennett* v. *Supreme Tent of Knights of Maccabees of the World, supra,* reads as follows:

"A party does not waive the question of jurisdiction, or validate a void judgment, by a general appearance in support of a motion to set the judgment aside."

The only other assignment is that the court erred in sustaining the motions to strike certain paragraphs of the second amended complaint and the general demurrer to its unstricken portions. In the assignment the expression, "the court erred in entering an order sustaining the motion to strike said paragraphs of said complaint of Earl E. Gordon," is used; but it is clear from the record that reference is had to the second amended complaint and not the original or first amended, because the original had no motions directed to it and both it and the first amended complaint had been superseded by a second amended complaint, and in one of the grounds urged in support of this assignment appears this language, "the

court erred in striking the second amended petition,'' referring evidently to the portions stricken rather than the petition as a whole. In ruling on the motions the court took the position that all parts of the second amended complaint, except those relating to the truth of the affidavit underlying the service of summons, should be stricken, but notwithstanding this paragraph 4 in its entirety, which sets up at great length many of the facts upon which appellant relies to show fraud in the service of process and a lack of jurisdiction of the person of appellant, was ordered stricken. Measured by the standard announced, this paragraph should not have been eliminated, and it must be that some other principle guided the court in such action, though the record does not disclose what it was. If it were the view, as the remarks of the court might indicate, that appellant had not shown a meritorious defense, we have just held that this was not required. Appellant states in his brief, however, that the motions and the special demurrer were sustained on the theory that the original complaint filed within one year from the date of the decree was defective, in this: It was drawn upon the assumption that a divorce had been granted, and this was amended some months after the expiration of this one-year period by framing its allegations upon the theory that an annulment had been procured, and the court, we gather from its statement, was guided by the conviction that actions for divorce and actions for annulment are so distinct in purpose and result, due to the fact that the former must be based upon occurrences subsequent to marriage and the latter upon antenuptial delinquencies, that to permit the amendment of a complaint seeking to vacate a decree of divorce in such a way as to state facts justifying the vacation of a decree of annulment, or *vice versa,* is to allow a new cause of action to be plead by amendment.

We have held, it is true, that these actions differ to such an extent that the residence requirements of paragraph 3860, *supra*, do not apply to a suit for annulment, but notwithstanding this the distinction between them is not so great that the allegations of a complaint seeking to vacate a decree of divorce may not be amended so as to plead facts justifying the vacation of a decree of annulment. Both actions relate to the same subject matter, the dissolution of the marriage status, and are so closely connected that it would be extremely technical to deny the right to amend in the manner indicated. The statute of Washington, for instance, authorizes service of summons by publication upon a nonresident defendant "when the action is for divorce," and in *Piper* v. *Piper,* 46 Wash. 671, 91 Pac. 189, the court held that actions for annulment were of the same nature as actions for divorce and hence that this language authorizes service in annulment actions in the same manner. It said further that a statute classifying actions for annulment and actions for divorce together does not contravene the constitutional provision that "no bill shall embrace more than one subject, and that shall be expressed in the title," the holding being placed upon the ground that "the subject of the annulment of marriage is germane to that of divorce," and, as stated in the original opinion, the two matters are often treated in statutes as of the same subject and as germane to each other. However, the difference between the two actions is immaterial here, since the grounds upon which appellant seeks to have the decree vacated, fraud and lack of jurisdiction are the same whether the action in which the decree was entered was one for divorce or annulment; a showing of a meritorious defense, the only eventuality which could render it material, not being required.

If a judgment has been procured through fraud and this becomes manifest to the court while it still has jurisdiction of the case, it has inherent power to set it aside without reference even to the rights of the parties in order that it may preserve and protect the sanctity of its judgments.

"These cases establish beyond dispute," says the court in *Yorke* v. *Yorke*, 3 N. D. 343, 55 N. W. 1095, "the principle that—not less in divorce cases than in any other class of cases—courts of general jurisdiction possess, *ex necessitate*, the power to emancipate themselves from the effects of a deceit practiced upon them, and to expunge from their records that which has been spread thereon only through fraud and deception." See *Leeker* v. *Leeker*, 23 Ariz. 170, 202 Pac. 397.

If appellee, before instituting her action or making the affidavit for publication, had informed her attorneys of the true facts, it is certain that she would not have attempted to invoke the jurisdiction of the court in the manner she did.

The order refusing to vacate the decree of annulment is reversed and the case remanded to the superior court of Pinal county, with direction to set it aside and grant the appellant a new trial.

LOCKWOOD, C. J., and ROSS, J., concur.