NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

MARC S., *Appellant*,

*v.*

ROBYN P., WILLIAM P., *Appellees*.

No. 1 CA-JV 15-0357
FILED 7-26-16

Appeal from the Superior Court in Maricopa County
No. JA509783
The Honorable Julia L. Vigil, Judge *Pro Tempore*

**JURISDICTION ACCEPTED, RELIEF DENIED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellee Robyn P.*

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Kent E. Cattani joined.

**K E S S L E R**, Judge:

¶1 Appellant Marc S. ("Marc"), the biological father of Autumn, appeals the juvenile court's denial of his motion to restore parental rights. Marc argues that the superior court erred in denying: (1) his motion as barred by Arizona Revised Statutes ("A.R.S.") section 8-123 (2016),[1] a statute controlling procedural irregularities in adoption cases; (2) his motion as barred by Marc having actual notice as of March 2014 of the severance of his parental rights to Autumn in a related case; and (3) him an evidentiary hearing to prove alleged fraud on the court as to service of process on him in the severance proceeding. For the reasons stated below, we treat this appeal as a special action, accept jurisdiction, but deny relief.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In September 2006, Robyn P. ("Robyn") gave birth to Autumn. In May 2007, the superior court determined that Marc was Autumn's biological father. In September 2007, Robyn married William P. ("William"). In January 2008, in a related paternity and custody matter, the family court awarded custody of Autumn to Robyn, but gave Marc supervised access two times per week, with the intent to gradually increase that parenting time if the supervised parenting time was successful.

¶3 In November 2008, Robyn and William filed an action to sever Marc's parental rights due to abandonment, indicating that Robyn and William intended to have William adopt Autumn. In a social study supporting the petition, an adoption specialist reported Marc's residence was in Scottsdale, Arizona. That study also stated the specialist had interviewed Marc and that he knew of the proposed severance and adoption, had at one time consented to the adoption, but that was no longer on the table, and he intended to fight the severance action. Mother and William attempted to have the severance petition served on Marc at the Scottsdale address, but the process server reported that, after eight attempts, service was unsuccessful. The process server stated he had talked to a woman at the house who said Marc did not live there, but she could forward him papers. At the direction of Robyn and William's

---

[1] We cite to the current version of applicable statutes when no revision material to this case has occurred.

counsel, the papers were returned to the attorney. The attorney sent the petition and notice of a hearing by certified mail to Marc at the Scottsdale address, but the documents were returned with the envelope marked undeliverable as addressed/unable to forward. In March 2009, Mother filed an affidavit to confirm service by publication, in which she swore, through her attorney, that Marc was avoiding service at the Scottsdale address. The motion also indicated that service by publication was accomplished through the Record Reporter in Arizona.

¶4        At a March 2009 publication hearing in the severance proceeding, the superior court concluded that service by publication was warranted because the adoption case manager had made Marc aware of an earlier hearing in the severance matter, that Marc had told the manager he resided in Scottsdale, and that there was a basis to believe Marc was avoiding service of process. Based on his failure to appear, the court concluded Marc had waived his legal rights, admitted the allegations of the petition and, based on evidence presented, the court severed his parental rights due to abandonment. That order was sent to Marc at the Scottsdale address.

¶5        Several weeks after the severance order, in April 2009, William, through the Maricopa County Attorney, filed this action, petitioning the juvenile court to allow William to adopt Autumn. That petition explained Marc's consent to adopt was not obtained because his parental rights had been terminated in the separate severance proceeding. In June 2009, the court issued an order of adoption.

¶6        Four years later, Robyn divorced William. In March 2014, almost five years after the adoption order, William informed Marc about his 2009 adoption of Autumn and the 2009 severance of Marc's parental rights. William invited Marc to live with him and Autumn in Arizona, while William's health was deteriorating. Marc stayed for several months.

¶7        In September 2015, Marc filed a motion in the adoption case seeking to restore his parental rights. In support of his request, Marc presented affidavits from himself and William attacking the juvenile court's personal jurisdiction in the severance proceeding, contending that: (1) prior to the severance hearing, Robyn knew that Marc had resided in New York since 2008, and both Robyn and the adoption case manager knew of his New York address prior to serving him with process by publication; (2) Robyn knew Marc had been living in New York, as shown by a January 2009 email exchange between Robyn and Marc, but Robyn

lied to the adoption attorney about that fact and sought to have the severance petition served in Scottsdale; and (3) information provided to the court by the adoption case manager in 2009 that he lived in Scottsdale was not accurate because during those January 2009 conversations Marc had told the adoption case manager he was living in New York but that documents left at the Scottsdale address would be forwarded to him by the woman living there. In an affidavit filed with the court, Marc also stated that the first time he learned about the severance and adoption was in March 2014 when William told him about the severance and adoption.

¶8        In October 2015, the juvenile court denied Marc's motion to restore parental rights without holding an evidentiary hearing.[2] It held the motion was barred by A.R.S. § 8-123 because it was filed more than one year after the adoption order. It also found Marc had knowledge of the termination through the severance minute entry in 2009, and if he had not received it, he knew there was a termination proceeding or knew of the termination at least as of March 2014, but failed to act until September 2015 when he filed his motion to restore parental rights. The court indicated that it would later decide Robyn's request for attorneys' fees. It did not certify its order as final for purposes of appeal.

¶9        Five days later, Marc appealed the juvenile court's order denying his motion. In late December 2015, the court denied Robyn's request for attorneys' fees. Marc did not file an amended notice of appeal.

**DISCUSSION**

**I.      Appellate Jurisdiction**

¶10       We have an independent duty to determine our appellate jurisdiction. *See Sorensen v. Farmers Ins. Co. of Ariz.,* 191 Ariz. 464, 465 (App. 1997) (noting appellate court has an independent duty to examine whether it has appellate jurisdiction over putative appeals). We construe Marc's motion to be one for relief from the severance and adoption orders pursuant to Arizona Rules of Procedure for the Juvenile Court ("Juvenile Rules") 85(A), incorporating standards for relief from judgment from Arizona Rule of Civil Procedure 60(c) ("Rule 60"). As such, the October 2015 order denying his motion would be appealable if it was a final order

---

[2]        The court interpreted the motion as requesting restoration of parental rights and vacation of the default severance order.

and the notice of appeal was filed within fifteen days of entry of the order. Juvenile Rules 103(A) and 104(A); *Tripati v. Forwith*, 223 Ariz. 81, 84, ¶ 14 (App. 2009) (holding that a final order denying a Rule 60(c) motion is appealable pursuant to A.R.S. § 12-2101(A)(3) (2016)).[3]

**¶11** Marc's notice of appeal was filed within fifteen days of the entry of the October order. However, that order was not final because the court had expressly indicated that it was still going to consider Robyn's request for attorneys' fees and had not certified that no reason existed to delay entry of the final order pending the fees issue. *See Bollerman v. Nowlis*, 234 Ariz. 340, 341, ¶ 1 (2014) (holding that an otherwise appealable judgment was not final for purposes of appeal if an issue of attorneys' fees was left undecided and the court had not included language from Arizona Rule of Family Law Procedure 78(B) certifying the order was final for purposes of appeal).[4] Marc's notice of appeal was thus premature. That appeal was not made effective by Arizona Rule of Civil Appellate Procedure ("ARCAP") 9(c), providing that a notice of appeal filed after the court announces an order or other form of decision but before entry of the resulting judgment is deemed filed as of the date of entry of the judgment. *See Camasura v. Camasura*, 238 Ariz. 179, 182-83, ¶¶ 12-16 (App. 2015) (holding that ARCAP 9(c) does not apply to an order entered but leaving a request for attorneys' fees for later decision). Thus, Marc's premature appeal was a nullity. *Id*. at 181, ¶ 6.

**¶12** We have discretion to consider Marc's appeal as a petition for special action. *See Grand v. Nacchio*, 214 Ariz. 9, 17-18, ¶¶ 20-25 (App. 2006) (holding that court of appeals may consider an appeal as a special action petition and accept jurisdiction when jurisdiction over an appeal is

---

[3]    "An appeal may be taken to the court of appeals from the superior court . . . [f]rom any order affecting a substantial right made in any action when the order in effect determines the action and prevents judgment from which an appeal might be taken." A.R.S. § 12-2101(A)(3) (2016).

[4]    While no Juvenile Rule references a certification of a judgment as final despite the existence of remaining issues to be decided, we will apply Arizona Rule of Civil Procedure 54(b), since it does not expressly conflict with any Juvenile Rule. *See* Juvenile Rule 67 (providing that the Juvenile Rules shall be interpreted in a manner designed to protect the best interests of the child).

lacking). Given the issues in this case dealing with the severance of a father's parental rights, the later adoption of the child, and the allegations of fraud on the court, we treat the appeal as a petition for special action, accept jurisdiction of the special action, but deny relief.

## II.     Section § 8-123 as Applied to Challenging the Adoption Order

**¶13**     Marc argues that the juvenile court incorrectly interpreted and applied A.R.S. § 8-123 because the statute limits the time to correct an "irregularity in the proceeding," *id.*, and a lack of personal jurisdiction is not a mere irregularity.

**¶14**     We review issues of statutory interpretation and application of statutes and rules *de novo. Pima Cty. v. Pima Cty. Law Enf't Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 13 (2005). We will affirm the superior court on any basis supported by the record. *City of Phoenix. v. Geyler*, 144 Ariz. 323, 330 (1985).

**¶15**     Section § 8–123 provides that: "After one year from the date the adoption decree is entered, any irregularity in the proceeding shall be deemed cured and the validity of the decree shall not thereafter be subject to attack on any such ground in any collateral or direct proceeding." Despite the language of the statute, in *Goclanney v. Desrochers*, 135 Ariz. 240, 242 (App. 1982), we held that lack of jurisdiction was not an irregularity within the meaning of the statute. Accordingly, if the alleged fraud on the court as to service of process had occurred in the adoption proceeding, the juvenile court would have erred in barring Marc's motion under § 8-123. Without proper service of process, a court lacks jurisdiction over a party and any judgment against the party would be void. "Proper service of process is essential for the court to have jurisdiction over the defendant. Consequently, a judgment would be void and subject to attack if the court that rendered it was without jurisdiction because of lack of proper service." *Duckstein v. Wolf*, 230 Ariz. 227, 233, ¶ 18 (App. 2012).[5]

---

[5]     As the juvenile court recognized in its order, Marc was seeking to vacate both the adoption order and the order severing his parental rights. By its own terms, § 8-123 does not apply to a motion challenging a severance order. Despite that fact, we affirm the court's decision as to the severance order for the reasons stated below.

¶16 The alleged fraud on the court did not occur in the adoption proceedings, but in the separate parental severance proceedings. We have not found an Arizona decision addressing whether a jurisdictional defect in a severance proceeding, which leads to an adoption without notice to or consent of the parent who has lost their parental rights, amounts to a mere irregularity in the adoption proceeding. *Cf. Roberto F. v. Ariz. Dept. of Child Safety*, 1 CA-JV 13-0209, 2015 WL 5827093 at * 1, ¶4 (Ariz. App., Oct. 6, 2015) (mem. decision) (holding that once mandate issued in appellate court decision vacating order severing father's parental rights, father was entitled to vacation of order of adoption entered while appeal from severance order was pending).

¶17 However, we need not decide whether § 8-123 can apply to an alleged jurisdictional defect that occurred outside of the adoption proceedings. Rather, we construe § 8-123 to bar a challenge to an adoption proceeding if the absent parent failed to bring the motion within one year of learning of the adoption or the fraud. In *Husband (G.T.B.) v. Wife (G.R.)*, 424 A.2d 12, 14-15 (Del. 1980), the Delaware Supreme Court affirmed an order denying an adoptive father's request to vacate an adoption based on an alleged fraud by the biological mother. The court reasoned in the alternative that a statute similar to § 8-123 but providing for a two year time limitation tolled the statute of limitations to challenge the adoption only until such time as the adoptive father discovered or should have discovered the fraud. The court concluded that since the adoptive father had filed the action for relief more than two years after learning of the fraud, the statute barred his motion. *See also Walk v. Ring*, 202 Ariz. 310, 319, ¶ 34 (2002) (holding that a statute of limitations for malpractice was tolled by the defendant's fraudulent concealment of the facts until the plaintiff knew or should have known of the concealed facts).[6]

¶18 That is the case here. Marc claimed in an affidavit that the first time he learned of the severance and adoption was in March 2014. As

---

[6] Nothing in our decision should be read to imply that a parent can commit a fraud on the court relating to service of process in a severance proceeding and then successfully petition for adoption without notice to the parent whose rights were severed without adequate notice. A parent committing such a fraud takes his or her chances that A.R.S. § 8-123 will not bar a later, timely challenge to the adoption.

the juvenile court noted, Marc failed to file the motion to vacate the adoption order for more than one year, until September 2015. As such, § 8-123 barred the motion because Marc knew of the severance and adoption more than one year before filing his motion for relief from the adoption proceeding.

¶19            In so holding, we recognize there is no common-law time limit for filing a motion for relief from judgment based on fraud on the court. *Alvardo v. Thomson*, 1 CA-SA 16-0051, 2016 WL 3063781, at *3, ¶¶ 15-16 (Ariz. App. May 31, 2016) (mem. decision). Nor does the doctrine of laches apply when there is lack of personal jurisdiction through an alleged fraud on the court. *McNeil v. Hoskyns*, 236 Ariz. 173, 178, ¶ 20 (App. 2014) (citing *Gordon v. Gordon*, 35 Ariz. 357, 365-66 (1929) for the principle that: "[P]laintiff committed fraud on the court by affidavit falsely representing she did not know where defendant lived"). *See also In re Milliman's Estate*, 101 Ariz. 54, 58 (1966) ("The theory underlying the concept of a void judgment is that it is legally ineffective—a legal nullity; and may be vacated by the court which rendered it *at any time*. Laches of a party cannot cure a judgment that is so defective as to be void; laches cannot infuse the judgment with life.") (quoting 7 Moore's Federal Practice § 60.25(4) (2d ed. 1955)) (emphasis added); *Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, 74, ¶ 19 (App. 2004) (motion to vacate void judgment is never untimely, "even in the case of unreasonable delay by the party seeking relief"); *Martin v. Martin,* 182 Ariz. 11, 14 (App. 1994) (holding that time does not limit court's duty to vacate a void judgment even when the party seeking relief delayed unreasonably). *Accord Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299-300, ¶¶ 42-43 (App. 2011) ("When a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court, this constitutes a fraud upon the court, and the court has the power to set aside the judgment at any time.").

¶20            Our ruling today as to Marc's attack on the adoption order is not based on laches or a common-law time limit for filing a motion for relief from an adoption order. Rather, it is based on the statutory bar of § 8-123, which we construe as limiting a challenge to an adoption order filed

more than one year after Marc learned of that order or the underlying severance order.[7]

**¶21** We also reject Marc's argument that at a minimum, the juvenile court should have held an evidentiary hearing on his allegations of a fraud on the court affecting the jurisdiction of the court to sever his parental rights in his absence. Normally, if there is a genuine dispute over material facts as to a fraud on the court relating to service of process and personal jurisdiction, the court should hold an evidentiary hearing. *Duckstein,* 230 Ariz. at 229, ¶ 1 ("[W]hen a motion to set aside a default judgment presents contested issues of material fact and a party requests an evidentiary hearing, the trial court should conduct an evidentiary hearing before ruling on the motion."). Here, however, there was no genuine dispute of material fact that Marc knew of the severance and adoption in March 2014 but delayed filing his motion for relief from the adoption order for more than one year. As such, no evidentiary hearing was needed.

**¶22** Accordingly, we affirm the juvenile court's order denying Marc's motion to restore his parental rights by vacating the adoption order.

### III.    Motion to Vacate the Severance Order

**¶23** Finally, we deal with Marc's motion as it relates to the severance order. To challenge a severance order issued after a party fails to appear to contest the severance, the movant must show that he had good cause to excuse his failure to appear and a meritorious defense. *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007). We need not address the former requirement because Marc's motion did not present a meritorious defense.

---

[7]    Robyn argues that Marc's motion is untimely under Juvenile Rule 46(E), which requires a motion for relief from judgment for fraud to be filed within six months of the order. This argument was not raised in the juvenile court, so we will not address it on appeal. *See Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 476, ¶ 22 (App. 2014).

**¶24** In his motion, Marc argued that Robyn had prevented him from seeing Autumn. We have held that when a parent seeking termination of the other parent's parental rights substantially interferes with that other parent's access to the child, termination cannot be granted based on abandonment. *Calvin B. v. Brittany B.*, 232 Ariz. 292, 297, ¶ 21 (App. 2013). However, Marc conceded that despite the juvenile court in the custody matter having granted him parental rights, once Robyn attempted to interfere with those rights, he left for New York and had no contact with Autumn for approximately five years. When a parent is faced with burdens interfering with his or her access to their child, we expect the parent to take all reasonable actions to have access and continue their relationship with the child. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 22 (2000) (citations omitted).

**¶25** Prior to the severance proceeding, Marc could have filed a motion to enforce the order granting him parental rights, especially because in that order the court noted its concern that Robyn might interfere with his access to Autumn. Instead of trying to enforce those rights, Marc left and stayed away for over five years. While we understand that Marc contended he was undergoing great stress at the time and that Robyn was simply going to replace him with William, we have to judge Marc's conduct by his actions, not his intent. *Id.* at 249, ¶ 18. Marc's affidavits do not amount to a prima facie showing of a meritorious defense on the grounds of abandonment because he left Arizona rather than fight for his rights to his child. The court did not err in denying the motion to vacate the severance order.

## CONCLUSION

**¶26** For the foregoing reasons, we consider the appeal as a petition for special action, accept jurisdiction, but deny relief.



Ruth A. Willingham · Clerk of the Court
FILED : jt

10