660 P.2d 491

**Thurza Johnson GOCLANNEY, Petitioner/Appellee,**

**and**

**White Mountain Apache Tribe, Intervenor/Appellee,**

**v.**

**Normand George DESROCHERS and Nadine Desrochers, Respondents/Appellants.**

**No. 2 CA–CIV 4412.**

Court of Appeals of Arizona, Division 2.

Dec. 14, 1982.

Rehearing Denied Feb. 4, 1983.

Review Denied March 8, 1983.

Ann R. Littrell, Whiteriver, for petitioner/appellee.

Robert C. Brauchli, Whiteriver, and Anthony R. Cohen, Tucson, for intervenor/appellee.

Gaynes & Rockafellow, P.C. by Leighton H. Rockafellow, Tucson, for respondents/appellants.

OPINION

HOWARD, Chief Judge.

Petitioner/appellee filed for a writ of habeas corpus in the superior court. The

main and determinative issue is whether Texas had jurisdiction to grant the adoption by appellant of a child who was a registered member of the White Mountain Apache Tribe. The trial court made findings of fact which are binding on us unless they are clearly erroneous. *Olson v. State,* 12 Ariz. App. 105, 467 P.2d 945 (1970).

The findings and the record disclose the following. Appellee Thurza Johnson Goclanney is the natural mother of Lalita Johanna Johnson. Both Thurza and Lalita are enrolled members of the White Mountain Apache Tribe. Thurza was not married when Lalita was born.

In June 1975, Thurza agreed to place Lalita for temporary care with The House of Samuel, Inc., a Tucson-based Christian placement organization. The House of Samuel, in turn, placed Lalita with appellants. The placement was understood by all to be only temporary and revocable at any time by Thurza.

In November 1975, Thurza took Lalita from appellants and returned with her to the reservation. However, two weeks later she agreed to let appellant have Lalita for one year and Nadine Desrochers picked up Lalita in Cibecue, Arizona, on the Fort Apache Indian Reservation in December 1975.

On July 30, 1976, Thurza married Hubert Goclanney, an enrolled tribal member. They went to Dallas, Texas, the next month. Although they remained in Texas until February 1977, neither Hubert nor Thurza registered to vote there or obtained Texas driver's licenses. They left personal property on the reservation in Arizona and listed Arizona addresses on their 1976 and 1977 tax returns as their place of residence.

In the fall of 1976 Thurza asked her sister, Kathleen DeClay, to care for Lalita. Kathleen, who already had temporary custody of Thurza's other child, agreed to do so. In early December 1976, Kathleen requested the tribal court and council to help her obtain custody of Lalita. The tribal court entered an order on December 8, 1976, granting temporary custody to Kathleen DeClay pending a hearing.

On December 10, tribal officials and individual tribal members, including Kathleen DeClay, went to Tucson to retrieve Apache children who had been placed with the House of Samuel. While the tribal members were there, Donie Green, an employee of the House of Samuel, called appellants to tell them that tribal judge Anna Early had entered an order requiring them to return Lalita to the reservation. Normand Desrochers told Donie Green, "When I hang up I am gone." The next day, appellants flew to Texas with Lalita and their younger son.

After arriving in Texas, appellants contacted an attorney in Fort Worth and made an appointment for Monday, December 13. The attorney prepared an "Affidavit of Relinquishment of Parental Rights by Mother" and "Affidavit of Status." Appellants then went to Thurza's apartment, showed her the documents and told her they were temporary custody papers. Thurza tried to read the documents but could not understand them. Appellants drove Thurza to the office of a notary public, James Horan. Horan never read or explained the documents to Thurza, although he did ask if she realized she was "giving up" her child. Thurza signed the documents believing they were temporary custody papers. Her execution of the documents was acknowledged by Horan, but was not witnessed by two witnesses as required by Texas law. Thurza was not given a copy of the documents.

The day after the documents were signed, appellants, Lalita and the younger son flew back to Tucson. They then returned to Fort Worth eleven days later, leaving their home and some of their children in Tucson. On January 17, 1977, appellants filed a joint petition in Texas seeking to terminate Thurza's parental rights and to adopt Lalita. Thurza was never notified of the proceedings and did not participate in them. She and her husband returned to the Apache reservation in February 1977.

During their stay in Fort Worth, appellants leased a small one-bedroom apartment for themselves, their children and Lalita. Only their youngest child attended school

there. Although Normand Desrochers was unemployed during the entire stay in Fort Worth, appellants never attempted to rent or sell their Tucson home nor did they disconnect the utilities there. They kept open their Tucson bank account and continued to receive mail at their Tucson address. They also listed Tucson as their legal residence when they filed their 1976 income tax return in February 1977.

On March 1, 1977, the Texas court entered orders that terminated Thurza's parental rights and made appellants adoptive parents of Lalita. Appellants returned to Arizona a few days after the Texas adoption orders were entered.

Thurza filed a petition for a writ of habeas corpus and the tribe was allowed to intervene. Both parties requested, inter alia, that the custody proceeding be transferred to the tribal court pursuant to 25 U.S.C. Indian Child Welfare Act, § 1911(a), (b) and (c). After hearing the evidence the trial court found that the Texas court had no jurisdiction to terminate parental rights and grant an adoption and it transferred the proceedings to the tribal court.

■ A.R.S. § 8–123 provides:

"After one year from the date the adoption decree is entered, any irregularity in the proceeding shall be deemed cured and the validity of the decree shall not thereafter be subject to attack on any such ground in any collateral or direct proceeding."

Since the habeas corpus was filed more than one year after the date of the decree, appellants contend appellees cannot attack the decree. We do not agree. We need not decide whether Texas' curative statute, which provides for a two-year period, is the statute to be applied rather than Arizona's because it is clear that Arizona's statute applies to an "irregularity." The lack of jurisdiction here was not an "irregularity."

■ The Texas jurisdictional requirement in adoption cases are found in § 16.01 of the Texas Family Code Ann. which states: "Any child *residing* in this State at the time the petition requesting adoption is filed may be adopted." (Emphasis added)

Must a minor child be a legal resident or domiciliary of Texas? That is the crucial issue here. Appellants argue that § 16.01 requires only the presence of the child in Texas or temporary residence at the most. Appellees argue that the statutes require that the child be domiciled in Texas.

Some courts, including Arizona, have taken the position that the residence within the state or county required of an adoptee or adoptive parent as the case may be, in order to effect an adoption, means legal residence or domicile. *In Re Adoption of Rials,* 220 La. 484, 56 So.2d 844 (1952); *In Re Webb's Adoption,* 65 Ariz. 176, 177 P.2d 222 (1947); *Brown v. Hall,* 385 Ill. 260, 52 N.E.2d 781 (1944); *Johnson v. Smith,* 94 Ind.App. 619, 180 N.E. 188 (1932); *Foster v. Waterman,* 124 Mass. 592 (1878). The Restatement of Conflicts (Second) § 78 is in accord with the foregoing cases:

"A state has power to exercise judicial jurisdiction to grant an adoption if

(a) it is the state of domicile of either the adopted child or the adoptive parent, and

(b) the adoptive parent and either the adoptive child or the person having legal custody of the child are subject to its personal jurisdiction."

Also in agreement with the foregoing cases and the Restatement view is Goodrich & Scoles, Conflict of Laws, 4th Ed. § 146 where the authors state that if the parties are not all domiciled in the same state an adoption can probably be accomplished at the domicile of either the adopting parent or the adoptive child by a court having the child or, if a minor, its legal custodian before it. We conclude that Texas requires that the child be domiciled in Texas.

■ Lalita's domicile might, depending on several factors, be determined either by the domicile of appellant, of Lalita's mother Thurza,[1] or Lalita's aunt, Kathleen DeClay.

---

1. The domicile of an illegitimate child is determined by that of his mother. *In Re Estate of Moore,* 68 Wash. 792, 415 P.2d 653 (1966); 25 Am.Jur.2d, Domicile § 69.

It is not necessary, however, to decide which of these persons determined Lalita's domicile because none of them were, according to the findings of fact and conclusions of law made by the trial court, domiciliaries of Texas.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.