NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GUARDIAN AD LITEM FOR A.S., ZETH W., *Appellants*,[1]

*v.*

DEPARTMENT OF CHILD SAFETY, *Appellee*.

No. 1 CA-JV 19-0141
FILED 12-24-2019

Appeal from the Superior Court in Maricopa County
No. JD530543
JS518529
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant Guardian ad Litem*

---

[1]     The child's guardian ad litem ("GAL") and Zeth W. filed separate notices of appeal from the superior court's order. The GAL then asked the superior court to appoint appellate counsel for the GAL, and the superior court did so. The GAL's opening brief, however, mistakenly states that it is filed on behalf of the child, not on behalf of the GAL. We correct our caption to properly reflect that the appellants are Zeth W. and the GAL, rather than the infant child.

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Zeth W.*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**J O H N S E N**, Judge:

**¶1**        Zeth W. and the guardian ad litem ("GAL") for A.S. appeal the superior court's denial of Zeth's motion for relief from the order terminating the parental rights of "John Doe." For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        In December 2016, Courtney W. ("Mother") gave birth to A.S. Mother tested positive for amphetamine and benzodiazepine, and A.S.'s meconium tested positive for amphetamine. Mother refused substance-abuse treatment resources from the hospital; she left without filling out a birth certificate or Social Security registration for A.S. and before the Department of Child Safety ("DCS") could assess her. DCS did not know who the child's father was or where he could be found. DCS took custody of A.S. and filed a dependency petition against Mother and "John Doe" – a fictitious name used to designate any male who might be A.S.'s biological father. DCS tried to locate Mother, to no avail.

**¶3**        DCS served Mother and John Doe with the dependency petition by publication. In April 2017, neither Mother nor anyone purporting to be A.S.'s father appeared at the dependency hearing, and, in their absence, the superior court found A.S. dependent. DCS eventually learned that Mother was married to Matthew W. ("Husband"). In May 2017, Husband and Mother appeared at the permanency planning hearing; Mother informed the court she wished to relinquish her parental rights to A.S. Husband requested paternity testing, claiming he was not A.S.'s biological father; the court approved paternity testing at Husband's

2

expense. In June, DCS moved to terminate Mother and Husband's parental rights.

¶4　　　　Mother did not appear for the initial termination hearing in July 2017, and the court accelerated the hearing and terminated her parental rights. Husband submitted to DNA testing, which excluded him as A.S.'s biological father. In September 2017, the court dismissed Husband from the case, heard evidence regarding John Doe's abandonment of A.S., and preserved that evidence pending service of a termination petition on John Doe. In October, DCS amended its termination motion to include John Doe, alleging he abandoned A.S. In January 2018, the court found service by publication complete as to John Doe, although it inadvertently did not include DCS's service affidavits in the record, then granted the termination motion based upon abandonment.

¶5　　　　In late February 2019, another man ("Zeth") contacted A.S.'s guardian ad litem, claiming he is the child's father. Zeth and Mother had engaged in a sexual relationship around the time of A.S.'s conception. Mother contacted Zeth on the day A.S. was born, and he came to the hospital that same day. He did not, however, register with the putative fathers registry, and he had been incarcerated following the child's birth. Zeth appeared at a status conference in March 2019 and asked the court to order paternity testing. DCS objected to his request, noting that John Doe's rights already had been terminated, Zeth had not registered with the putative fathers registry and A.S. was nearing adoption.

¶6　　　　Zeth then moved to establish his paternity and for relief from judgment under Arizona Rule of Civil Procedure 60(b), asserting DCS failed to properly serve John Doe and Mother intentionally concealed Zeth's identity from DCS during the dependency.[2] DCS responded, and the superior court allowed oral argument. The court later issued a ruling denying Zeth's motion, and he timely appealed.

¶7　　　　After Zeth and the GAL had filed their opening briefs, DCS moved to stay the appeal and temporarily revest jurisdiction in the superior court. DCS asserted that at the January 2018 publication hearing, it had offered the court an affidavit of service by publication and affidavit of

---

[2]　　　Absent material revision after the relevant date, we cite the current version of a statute or rule. The parties cited Arizona Rule of Civil Procedure 60 in the superior court and in the opening briefs, but as DCS points out in its answering brief, the applicable rule is Arizona Rule of Procedure for the Juvenile Court 46(E).

publication for John Doe and wanted the record corrected to reflect this. Neither Zeth nor the GAL responded, and this court granted the motion. The superior court later issued an order correcting the record to reflect the affidavits DCS proffered at the January 2018 hearing.

**¶8**        We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 8-235(A) (2019) and 12-120.21(A)(1) (2019).

## DISCUSSION

**¶9**        Zeth challenges the superior court's order denying his motion for relief from judgment.  He argues the court abused its discretion in denying his motion because John Doe was not properly served with notices of the dependency or termination proceedings and DCS's failure to investigate the identity of A.S.'s natural father amounted to misconduct.[3] The GAL argues Zeth was not properly served with notice of the dependency.

**¶10**        This court reviews a motion to set aside a judgment for an abuse of discretion. *Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 308 (1983). We interpret court rules and statutes *de novo. Pima County v. Pima County Law Enf't Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 13 (2005).

**¶11**        Arizona Rule of Procedure for the Juvenile Court 46(E) allows a party to move to set aside a judgment if the motion

> conform[s] to the requirements of Rule 60(b)-(d), Ariz. R. Civ. P., except that the motion shall be filed within six (6) months of the final judgment, order or proceeding unless the moving party alleges grounds pursuant to Rule 60(b)(1), (2) or (3), in

---

[3]        In its ruling, the superior court noted that Zeth's "standing to challenge any findings and orders in this case is seriously suspect," but then the court proceeded to address the merits of his claim.  Because the superior court addressed the merits and the parties have not raised the issue of standing on appeal, we too will address the merits. *See Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 308 (1983) ("[I]t is a highly desirable legal objective that cases be decided on their merits and that any doubts should be resolved in favor of the party seeking to set aside the default judgment."); *State v. B Bar Enters., Inc.*, 133 Ariz. 99, 101, n.2 (1982) (addressing merits because "standing is not a constitutional jurisdictional requirement" in Arizona and other party failed to raise the issue on appeal).

which case the motion shall be filed within three (3) months of the final judgment.

¶12　　　　As relevant here, Arizona Rule of Civil Procedure 60(b) allows a party to apply for relief from a final judgment if the judgment "(3) [is procured by] fraud . . . , misrepresentation, or other misconduct of an opposing party," "(4) the judgment is void," or for "(6) any other reason justifying relief." As for the fourth ground, "[a] judgment or order is void if the court lacked jurisdiction over the subject matter, over the person, or over the particular judgment or order entered." *Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, 74, ¶ 19 (App. 2004). Generally, in civil cases, "[w]hen a judgment is void, the court must vacate it." *Ruffino v. Lokosky*, 245 Ariz. 165, 169, ¶ 10 (App. 2018); *see also Hughes v. Indus. Comm'n*, 69 Ariz. 193, 197 (1949) ("[A] void order of adoption has no validity or sanctity and may be attacked in a collateral proceeding."); *Goclanney v. Desrochers*, 135 Ariz. 240, 242 (App. 1982) (order void for lack of jurisdiction not subject to statutory time limits in A.R.S. § 8-123 (2019)).

¶13　　　　"In severance proceedings, service of process need not be sufficient to confer *in personam* jurisdiction over the adverse party so long as it otherwise comports to service of process in civil actions." *Maricopa County Juv. Action No. JS-5860*, 169 Ariz. 288, 290 (App. 1991). "Whatever method of service is utilized, it must give notice sufficient to meet the requirements of due process." *Id.* Arizona Rule of Procedure for the Juvenile Court 48(D) states that the dependency petition, notice of hearing and temporary orders shall be served in accordance with Arizona Rules of Civil Procedure 4.1 or 4.2. Arizona Rule of Procedure for the Juvenile Court 64(D)(2) provides that a termination motion shall be served in accordance with Arizona Rule of Civil Procedure 5(c) at least ten days before the initial termination hearing. When a party has not appeared in a proceeding, however, Arizona Rule of Civil Procedure 5(a)(3) provides that "a pleading that asserts a new claim for relief . . . must be served on [the non-appearing] party under Rule 4, 4.1, or 4.2, as applicable."

¶14　　　　Here, Zeth's motion was untimely under Rule 46(E). The superior court issued its order terminating John Doe's parental rights on January 25, 2018. Zeth filed his motion for relief from judgment on April 8, 2019 – more than 14 months after the judgment issued. Even so, his

arguments about insufficient service and notice, if well taken, could result in a void judgment, so we address them here.[4]

**¶15** Regarding the dependency petition, Zeth and the GAL argue, and DCS admits, that it did not file an affidavit of service by publication showing due diligence and explaining why service by publication was necessary. Zeth, however, did not raise this issue in his motion for relief from judgment in the superior court. *See Hirsch*, 136 Ariz. at 311 ("[A]n appeal from a denial of a Rule 60 motion is restricted to the questions raised by the motion to set aside."). Moreover, DCS is correct that "there was reasonable evidence available to the court to determine that publication on John Doe was warranted under the circumstances." *See id.* at 308 ("It is the fact of service and the resulting notice, rather than the proof of service, that establishes the court's jurisdiction over the defendant.").

**¶16** Here, DCS filed two affidavits of publication for John Doe concerning the dependency. Each notified John Doe that a dependency petition had been filed and listed the date and time of the upcoming publication hearing. The notice was published over four weeks in February 2017, more than satisfying the requirements of Arizona Rule of Civil Procedure 4.1(*l*)(2). The superior court found at the subsequent publication hearing that "service is complete for . . . John Doe," and the record supports this finding. Service by publication is warranted only if it "is the best means practicable in the circumstances for providing the person with notice of the action's commencement." Ariz. R. Civ. P. 4.1(*l*)(1). Here, DCS did not have a last-known address for John Doe and knew nothing of his identity or whereabouts. Mother had abandoned A.S. at the hospital without leaving any information about the identity of the child's father and without speaking to DCS. Nor did DCS have any means to contact Mother, and the case manager's attempts to find her bore no fruit. Mother did not appear in the case until May 2017, more than a month after the superior court entered its dependency findings.

**¶17** Zeth and the GAL next argue that DCS failed to properly serve the termination motion on John Doe. But the superior court received and considered DCS's affidavit of service by publication and affidavit of publication for John Doe at the January 2018 hearing, though the affidavits

---

[4] Zeth's motion also cited Arizona Rule of Civil Procedure 60(b)(3) (fraud). Because Zeth's motion on that ground plainly was time-barred, we need not address the GAL's argument that the superior court erred by relying on Zeth's failure to file with the putative fathers registry when it denied the motion.

were not immediately filed in the record. Upon review, the affidavit of publication shows that DCS notified John Doe that it had filed the termination motion and listed the date and time of the upcoming publication hearing. The notice was published for four consecutive weeks in December 2017, more than ten days before the publication hearing. *See* Ariz. R.P. Juv. Ct. 64(D)(2). Furthermore, DCS's affidavit of service by publication avowed that DCS did not have a previous address for John Doe or other identifying information and that his whereabouts were unknown. Moreover, in April 2019, upon DCS's request, the superior court conducted an *in camera* review of hundreds of DCS case notes and found they contained no suggestion that DCS knew the identity of A.S.'s father. Thus, DCS properly effectuated service of the termination motion on John Doe.

**¶18** Zeth next argues DCS engaged in misconduct when it "did virtually nothing to identify John Doe," thereby rendering service by publication inappropriate. Zeth's argument, however, is untimely under Rule 46(E), which allows one to bring a misconduct claim only within three months of the judgment. Ariz. R.P. Juv. Ct. 46(E); Ariz. R. Civ. P. 60(b)(3); *see also In re Adoption of Hadtrath*, 121 Ariz. 606, 609-10 (1979) (fraudulent judgments are voidable and may be time-barred, as they do not affect the court's jurisdiction).[5] Moreover, Zeth did not raise this argument in his

---

[5] Although Rule 46(E) incorporates Arizona Rule of Civil Procedure 60(d), Zeth does not argue that any of those exceptions apply here. *Dawson v. Withycombe*, 216 Ariz. 84, 100, ¶ 40, n.11 (App. 2007) (issues not raised in opening briefs may be waived).

motion for relief from judgment, arguing instead that Mother willfully concealed his identity from DCS and the court. *See Hirsch,* 136 Ariz. at 311. We therefore do not address his argument on appeal.

## CONCLUSION

**¶19** For the reasons stated, we affirm the superior court's order denying Zeth's motion for relief from judgment.

